The STATE of Ohio, Appellee,

v.

MAYS, Appellant.

[Cite as *State v. Mays* (2000), 139 Ohio App.3d 177.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000003.

Decided July 28, 2000.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Thomas J. Boychan, Jr.,* Assistant Prosecuting Attorney, for appellee.

*Cathy R. Cook,* for appellant.

DOAN, Judge.

Defendant-appellant, Nicholas A. Mays, appeals the order of the Hamilton County Court of Common Pleas sentencing him to consecutive terms of incarceration for aggravated vehicular homicide and tampering with evidence, both felonies

of the third degree. For the following reasons, we reverse in part the sentences imposed by the trial court and remand the cause for further proceedings.

The record indicates that on August 19, 1999, nineteen-year-old Mays was operating an automobile in which his cousin was a passenger. At approximately 1:45 a.m., they saw a pedestrian, later identified as Michael Boumer, in a grocery store parking lot. According to Mays, Boumer appeared to be intoxicated,[1] and the two young men decided that they would "mess with" Boumer by appearing to offer him a ride. Mays intended to nudge Boumer with the vehicle and then drive away.

Mays did drive the vehicle in the direction of Boumer, but instead of merely nudging him, he inadvertently ran over him, causing him fatal injuries. Upon seeing that Boumer was injured, Mays drove to another location and called for emergency aid. He then went to a car wash, where he cleaned the vehicle to remove evidence of the fatal collision.

On the day after the incident, Mays took a planned trip to Florida, during which his mother convinced him that he should report his involvement in the crime. Mays did so, returning to Cincinnati and giving a full confession to the police.

In October 1999, Mays entered guilty pleas to one count each of aggravated vehicular homicide and tampering with evidence. The trial court sentenced him to five years' incarceration for the aggravated vehicular homicide and to four years' incarceration for tampering with evidence, with the terms to run consecutively.

In a single assignment of error, Mays argues that the trial court erred in imposing the maximum term of incarceration for the aggravated vehicular homicide and in imposing consecutive sentences. Mays concedes that the sentences were within the range allowed by law for third-degree felonies and that the trial court made the requisite findings for the imposition of the sentences pursuant to the holding of the Ohio Supreme Court in *State v. Edmonson.*[2] The sole issue posed in the assignment of error, therefore, is whether the record supports the trial court's findings.[3]

---

1. Investigating officers confirmed that Boumer had consumed some alcohol. However, the record also indicates that Boumer was mentally handicapped.

2. (1999), 86 Ohio St.3d 324, 715 N.E.2d 131.

3. See *State v. Richmond* (Mar. 13, 1998), Hamilton App. No. C–970518, unreported, 1998 WL 107653.

■ Mays first argues that the court erred in imposing terms of incarceration greater than the minimum. To impose a prison term more than the minimum for the offender's first prison term, the court must find that the minimum sentence would demean the seriousness of the offense or not adequately protect the public from future crime.[4] Here, the trial court found both to be applicable.

■ We hold that the trial court's finding with respect to the seriousness of the offenses is supported by the record. Mays conceded that his intention was to "mess with" a person whom he perceived to be impaired in some way, and in doing so, he deprived the thirty-nine-year-old victim of his life. Mays did not immediately seek help for Boumer, but instead thought first of his own interest in evading detection for the crime. His concealment of the crime was compounded when he washed the car and left the jurisdiction. Under these circumstances, the trial court reasonably concluded that the minimum term would demean the seriousness of the offenses. Because the trial court's finding with respect to the seriousness of the offenses was proper, we need not address Mays's argument concerning the adequate protection of the public.[5]

■ In his second argument, Mays claims that the trial court erred in imposing the maximum sentence for aggravated vehicular homicide. Before imposing the maximum term of incarceration for an offense, the court must find that the offender has committed the worst form of the offense, poses the greatest likelihood of recidivism, or is of a certain class of repeat offenders.[6] In the case at bar, the court found that Mays had committed the worst form of aggravated vehicular homicide. We disagree.

In past cases, this court has grappled with the somewhat vague concept of what constitutes the "worst form" of an offense.[7] And while the concept is difficult to define in concrete terms, we hold that Mays's conduct in the case at bar did not constitute the worst form of aggravated vehicular homicide. Though the evidence certainly indicates that Mays exercised extremely poor judgment in carrying out his wish to "mess with" Boumer, there is no indication that he harbored any malice toward the victim. Instead, the record indicates that Mays's conduct started as a reckless, poorly conceived prank and ended in tragedy. And

---

4. R.C. 2929.14(B).

5. Moreover, we reject Mays's suggestion that the trial court did not properly or adequately state its reasons for its findings under R.C. 2929.14(B). As the Supreme Court of Ohio held in the syllabus of *Edmonson*, the reasons underlying the sentencing findings need not be made explicit in the record.

6. R.C. 2929.14(C).

7. See, *e.g., State v. Kershaw* (1999), 132 Ohio App.3d 243, 724 N.E.2d 1176.

while we in no way wish to minimize the loss of a human life or to condone Mays's actions, this is not the type of conduct for which the legislature has reserved the maximum sentence.

Furthermore, although he admittedly thought of his own interests before seeking help for Boumer, Mays did take steps to ensure that emergency personnel were notified promptly. His actions therefore did not reflect an utter lack of concern for Boumer or otherwise demonstrate a perversity of character that would justify the imposition of the maximum sentence. Further, there is no indication that the victim suffered for a prolonged period of time before he died or suffered to a greater degree than any other victim of a vehicular homicide. Finally, Mays surrendered to authorities and confessed to the crimes. Under these circumstances, we cannot say that Mays committed the worst form of the offense within the meaning of R.C. 2929.14(C). We therefore hold that the trial court erred in imposing the maximum term for that offense.

Mays next argues that the trial court erred in imposing consecutive sentences. To impose consecutive terms of imprisonment, the court must find that consecutive sentences are necessary to protect the public from future crime and that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. The trial court must also find one of the following: (1) that the offenses occurred while the offender was under community control; (2) that the harm caused was great or unusual or (3) that the offender's criminal history requires consecutive sentences.[8] Of the latter factors, the court in the instant case found that the harm caused was unusual or great.

We agree with Mays that the trial court's findings with respect to consecutive sentences are not supported by the record. Concerning the protection of the public from future crime, Mays's criminal record included no adult convictions and only one juvenile delinquency adjudication. Thus, there is little indication that Mays is likely to recidivate. Also, the trial court revoked Mays's operator's license, thereby reducing the likelihood that future vehicular offenses would occur. Further, as to the finding that consecutive terms were not disproportionate to Mays's conduct and to the danger that he posed to the public, we have already noted that Mays's conduct, while reckless and ill-conceived, was not the product of malice. Given the revocation of Mays's license, his confession, and his demonstrated remorse,[9] the conduct also appears not likely to be repeated. Finally, the harm caused by the offense, while senseless and tragic, was not greater than the harm caused in every other aggravated-vehicular-homicide case.

---

8. R.C. 2929.14(E)(4).

9. The investigating officers and the author of the presentence-investigation report indicated that Mays was genuinely remorseful.

Under these circumstances, we hold that the trial court erred in imposing consecutive sentences.

Having held that the trial court erred in imposing the maximum sentence for the aggravated vehicular homicide and in otherwise imposing consecutive sentences, we hereby reverse those parts of the trial court's judgment and remand the cause for resentencing in accordance with law.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SUNDERMANN, J., concurs.

HILDEBRANDT, P.J., concurs in part and dissents in part.

HILDEBRANDT, Presiding Judge, concurring in part and dissenting in part.

I concur with the conclusion that the trial court properly imposed greater than the minimum terms of incarceration. However, because I believe that the trial court was also correct in imposing the maximum sentence on the first count and in imposing consecutive sentences, I would affirm the judgment in its entirety.

The very fact that the term "worst form of the offense" is a vague concept should cause this court to accord great deference to the trial court's finding with respect to that statutory factor. In the case at bar, Mays senselessly took the life of the victim because he wished to "mess with" him. The wantonness of that conduct alone could have justified the trial court in imposing the maximum sentence. However, Mays compounded his misconduct by leaving the scene of the collision, thereby making it clear that he valued his own interest in evading detection above the life of Boumer. The majority concedes as much, yet persists in holding that Mays did not commit the worst form of the offense. His eventual call for emergency aid and his subsequent remorse for his actions did not erase the fact that his conduct was egregious and deserving of the greatest punishment.

For many of the same reasons, I believe that the imposition of consecutive sentences was proper. The utter lack of regard for human life that Mays exhibited by using his automobile to "mess with" a person whom he believed to be impaired provided ample support for the trial court's conclusion that consecutive sentences were necessary to prevent future crimes and to protect the public. Moreover, the fact that death is caused in all aggravated-vehicular-homicide cases should not prevent a finding that the harm caused in the instant case was great or unusual. Mays's taking of a life in such a wanton manner justified the court in finding that the harm done was great or unusual, and I would not disturb that

finding. In my view, nine years of incarceration is not excessive when weighed against the taking of a human life under these circumstances. I therefore respectfully dissent in part.